WILLIE HAROLD LOVE *v.* STATE OF INDIANA.

[No. 572A221. Filed January 31, 1974.]

*Harriette Bailey Conn* [*Mrs.*], Public Defender of Indiana, for appellant.

*Theodore L. Sendak,* Attorney General, *Harry L. Sauce, III,* Deputy Attorney General, for appellee.

WHITE, J.—This is the fourth opinion to be handed down in two appeals from a judgment denying petitioner-appellant Love's petition for post conviction relief from a determinate sentence of ten years for robbery.

The first appeal was to the Supreme Court of Indiana. At that time it was the only appellate court in the State with jurisdiction of appeals in criminal cases and in post conviction relief proceedings. That appeal was premised on the overruling of a motion to correct errors which contended (as the sole error) that the trial court had erred in making no finding on the issue raised by the following allegation in the petition for post conviction relief:

"This petitioner was grossly denied his constitutional rights when Indianapolis police held him 24 hours without advising him of his rights and without counsel of an attorney."

The Supreme Court remanded saying:

"Appellant claimed in his petition for post-conviction relief that he was denied his constitutional rights when the Indianapolis police held him twenty-four (24) hours without advising him of his rights and without the counsel of an attorney. The court's specific findings of fact on this issue, if indeed there were any, were as follows:

" '3 (C) There was no illegality in the guilty plea proceedings or in the evidence adduced at said proceedings.'

\* \* \*

"Clearly the court was required to make specific findings in this case, but we are able to discern no specific findings concerning what happened during appellant's first twenty-four (24) hours after arrest. We therefore remand this case to the court below to make specific findings of fact and conclusions of law on the issue of whether appellant's constitutional rights were violated during the first twenty-

four (24) hours of his incarceration, namely whether he was properly advised of his rights per *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and whether he was informed of his right to counsel during the line-up per *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149." (257 Ind. 57, 272 N.E.2d 456, 457, 458.)

On petition for rehearing (which was denied), the Supreme Court agreed that *Miranda* and *Wade* are not directly material but could

"not agree with petitioner that the trial court's findings sufficiently answer . . . ['the ultimate fact to be ascertained . . . whether the plea of guilty was knowingly and voluntarily given']. We thus still maintain that the cause must be remanded to make *specific* findings of fact and conclusions of law on the issue of whether the plea of guilty was voluntarily, knowingly, and freely given." (274 N.E.2d 238, 239.) (Original emphasis.)

The trial court thereafter filed what it denominated "Supplemental Specific Findings of Fact" which read:

"In accordance with the mandate of the Supreme Court of Indiana in the certified opinion dated October 20, 1971, under No. 1070 S 249, this Court makes the following supplemental specific findings of fact:

"1. The defendant's plea of guilty was voluntarily, knowingly, and freely given.

"2. The defendant was specifically and fully advised of his rights by this Court, before acceptance of his plea, as shown by the transcript on plea of guilty.

"3. The defendant did not plead guilty because of any threats or promises that had been made to him.

"4. That after consultation with his attorney and after being advised of his rights by the Court, the defendant pleaded guilty because he believed such plea to be in his own best interests."

The appellant then filed a motion to correct errors in that supplemental finding, specifying the following errors:

"1. It was error to find, in rhetorical paragraph numbered '1.' that 'the defendant's plea of guilty was voluntarily, knowingly and freely given,' inasmuch as the record heretofore filed makes it clear that the defendant's guilty

plea was tainted by events in the first twenty-four hours after his arrest when he was subjected to line-up in absence of counsel and also made statements to police in absence of waiver of his rights to counsel, as more specifically detailed in the attached Affidavit of Willie Harold Love, marked as Exhibit 'A'.

"2. It was error to find that, as stated in rhetorical paragraph '3.' of the said supplemental findings, 'the defendant did not plead guilty because of any threats or promises that had been made to him,' since, as shown by Exhibit 'A' and implications of the record heretofore made, the determination to plead guilty was a direct consequence of the defendant's belief that his attorney and a detective had agreed on a sentence of either one [1] year on the farm or not less than one [1] nor more than ten [10] years, if petitioner cooperated with said detective by making statements admitting culpability in numerous offenses that the police were investigating, whereupon he incurred potential liability for multiple sentences of not less than ten [10] nor more than twenty-five [25] years, without any available defense.

"3. It was error to have entered said Supplemental Specific Findings of Fact without a determination whether there had been denials of rights under *Miranda* or *Wade* as factors which, under the circumstances of this case, were material to a determination that the plea of guilty was voluntarily, knowingly, and freely given, or to have avoided additional evidence on said issues in view of the paucity of the record, and the allegations of the Petition for Post-Conviction Relief, together with a previous Motion to Correct Errors, that there had been no advice of rights during the first twenty-four hours in custody when the petitioner's fate was sealed, particularly in view of the showing that he had had little benefit from his retention of counsel in such period, was following his attorney's advice given without more adequate consultation than a telephone call in police headquarters and a brief period in the court-room."

When that motion was overruled the appellant took a second appeal. By that time the new judicial article (Art. 7, Constitution of Indiana) had become effective, as well as Appellate Rules 4(A) and 4(B) adopted pursuant thereto (Art. 7, §§ 4 and 6) whereby appellate jurisdiction was then in the Court of Appeals. We thus received the second appeal

with some of the law of the case already established by the two Supreme Court opinions. It became our unpleasant task to say that the supplemental findings made by the trial court did not comply with the Supreme Court's mandate as to specificity nor as to " 'what happened during appellant's first twenty-four (24) hours after arrest.' " *Love* v. *State* (1973), 157 Ind. App. 413, 300 N.E.2d 693, 694, 38 Ind. Dec. 299, 301. Instead of remanding, however, we retained jurisdiction and directed the trial court to make and certify to us the findings and conclusions which the Supreme Court had directed.

On October 29, 1973, the trial court filed in this court a "Second Supplementary Findings of Fact and Conclusions of Law" which covers seventeen pages. The findings which constitute a substantial compliance with our directive are findings numbered IV through XI, which read:

"IV. The court finds that, during the first twenty-four (24) hours after the arrest of the defendant-petitioner the defendant-petitioner was not subjected to custodial interrogation nor was he placed in any lineup for the reason that there is no evidence in the record that the defendant-petitioner was placed in any lineup nor is there any evidence in the record believed by the Court that the defendant-petitioner was questioned in custody during the first twenty (24) [sic] hours after his arrest.

"V. The Court finds that four (4) days after his arrest the defendant-petitioner sent for Detective Sergeant Harry Dunn, Indianapolis Police Department, who brought the defendant-petitioner from the Marion County Jail to the Homicide and Robbery office of the Indianapolis Police Department. He was then informed of his Miranda rights in accordance with the Indianapolis Police Department warning and waiver form (commonly known among Indianapolis Policemen as 'a copy of the rights'), which the defendant then signed. Following the warning and waiver Sergeant Dunn then took a statement from the defendant-petitioner.

"VI. That there is no testimony in the record before this Court of the defendant-petitioner other than what has been set out above.

"VII. That there is no evidence in the record before this Court as to any lineup or custodial questioning other than what has been set out above.

"VIII. That there is no evidence in the record before this Court as to anything which occurred in the first twenty-four (24) hours after the arrest of the defendant-petitioner other than what is set out above.

"IX. The Court finds that the defendant-petitioner did not plead guilty because of any unlawfull [sic] interrogation for the reason that there is no evidence that the defendant-petitioner pleaded guilty because of such interrogation.

"X. The Court finds that the defendant-petitioner did not plead guilty because of any unlawful lineup for the reason that there is no evidence that he so pleaded.

"XI. The Court finds that the defendant-petitioner has failed to sustain his burden of proof as to any material allegation of his petition."

The Public Defender's initial brief, reply brief, and supplemental brief filed after these last findings were filed make arguments, the essence of which we believe can be summarized as follows:

1. The petitioner-appellant's affidavit filed with his second motion to correct errors is *evidence* which renders erroneous the "no evidence" findings above quoted.

2. That [t]he trial court was "not excused from specifically finding on a post conviction issue . . . [when] the trial court had power to open the judgment for additional evidence necessary to support the required specific findings. . . ."

3. The "judicial inquiry into voluntariness or into the advice of counsel prior to submission of the guilty plea" was inadequate and his finding that the guilty plea was knowingly and voluntarily made rests on inadequate answers by petitioner.

4. The trial court should have granted a new trial on the petition for post conviction relief to permit testimony of the facts in appellant's affidavit.

The foregoing is an oversimplification of the summary of argument in appellant's supplemental brief but it has not distorted the admission implicit in the whole argument: That the evidence adduced at the post conviction relief hearing

failed to make a case for the petitioner. Such an admission could not have been avoided. The Public Defender, who must represent all indigents who wish to appeal from a denial of post conviction relief,[1] is to be commended for the ingenuity of her efforts to avoid the consequences of petitioner's failure to carry his burden of proof.[2]

Specifically challenged by the supplemental brief is the finding (No. IV) that there is no evidence that petitioner was placed in any line-up during the first twenty-four hours after his arrest. The testimony of Police Detective Sergeant Harry Dunn at the guilty plea hearing included the statement:

> "There was a photoscan camera in the drug store at the time which was making pictures. Mr. Love's picture was made during the time of this holdup. The next morning of course I received the photographs. I knew who the subject was, it was on a Sunday. I went Monday and filed a robbery warrant for Willie Harold Love, and on a Tuesday he came to Police Headquarters and was arrested. At that time he was arrested and slated into court. I had Mr. Manring and Miss Jugg in to view the subject and both made positive identification as Mr. Love being the subject at the back of the counter with the gun."

That testimony was a part of the record pursuant to Rule PC. 1(4). Standing alone, that statement does not show that petitioner was viewed by the robbery victims while he was in a lineup or that he was viewed during the first twenty-four hours. These details were supplied by petitioner's affidavit filed with his second motion to correct errors (filed January 11, 1972, almost twenty months after the PC. 1 hearing; almost eighteen months after the first motion to correct errors, and sixty-four days after the first supplemental findings of fact were filed by the court on November 8, 1971). It reads, in pertinent part:

---

1. PC. 1(9); *Dixon* v. *State* (1972), 152 Ind. App. 430, 284 N.E.2d 102, 31 Ind. Dec. 393.

2. PC. 1(5) includes the provision: "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."

"Willie Harold Love, Petitioner for Post-Conviction Relief, being first duly sworn, upon his oath affirms and verifies the following facts material to his case, not previously heard:

\* \* \*

"5. Following a night in the lock-up, petitioner was told that he had to go in a line-up, to which he objected, asking for his lawyer by name, being told that that was what everybody had to do. Petitioner was taken into the line-up room in company with a number of dark-skinned Negroes, about five whites, and the petitioner as the only light-skinned Negro. While perhaps eight people were on stage at a time, the center man was directed to step up to a microphone, give his name, age, the charge upon which he was arrested, and then step back. Petitioner was also asked to turn to the right and to the left, twice, was asked if he was not also arrested on a charge of vehicle-taking, which he denied, not having been charged with that, so far as he knew. Petitioner was the only person in that line-up who was asked to do these things or interrogated specially. Petitioner could not see who was behind the screen.

"6. Petitioner and others in the line-up with him were taken to a lock-up behind the Municipal Courtroom, and Officer Harry Dunn came back there to talk to this petitioner, said to him 'Man, what you been doing? All of those people down there identified you. You'll see them all out there in the court-room.' Petitioner said that he just wanted to see his attorney, to which Dunn replied that Ward was out there, that he was going to try to get the case filed directly in Criminal Court and avoid the grand jury."

Appellant's only authority for contending that the affidavit is a part of the evidence which should have been considered by the trial court in making his specific findings of fact is Trial Rule 59 (D), which reads, in pertinent part:

"When a motion to correct errors is based upon evidence outside the record, the cause must be sustained by affidavits showing the truth thereof served with the motion. . . ."

TR. 59(D) does not purport to provide what type of "evidence outside the record" is a valid basis for relief upon a motion to correct errors. A common example, however, is found in TR. 59(A): "(6) *Newly discovered material evidence which could not, with reasonable*

diligence have been discovered and produced at the trial." (My emphasis.)

We have never heard of any rule which permits a party who has failed to sustain his burden of proof, to cure that defect by attaching his own affidavit to a post judgment motion. If it were thus possible to avoid the consequence of failing to carry one's burden of proof, some valid excuse for failing to so testify in the first instance would certainly be required. Appellant does not assert any reason whatsoever for his failure to bring forth at the PC. 1 hearing these "facts material to his case, not previously heard". Rather, he contends (in effect) that they automatically become a part of the evidence at the hearing merely because the motion to correct errors is a part of the record.

In attempting to make that point appellant quotes TR. 59 (D)'s predecessor Rule 1-15 which made a similar provision for affidavits supporting a motion for new trial and said: "Such affidavits shall be considered as evidence without the introduction thereof *on the hearing on the motion* and shall be a part of the record without a bill of exceptions." (Emphasis added.) Assuming, *arguendo*, that this provision is an implied provision of TR. 59(D), it makes the affidavit evidence *only* for the purpose of ruling on the motion for new trial; not for the purpose of proving or disproving any fact at issue in the trial.

Appellant also cites *Scharbrough* v. *State* (1968), 249 Ind. 316, 232 N.E.2d 592, 12 Ind. Dec. 379, and *Finger* v. *State* (1973), 260 Ind. 148, 293 N.E.2d 25, 35 Ind. Dec. 410, as authority for the contention that the trial court erred in failing to consider the affidavit when making its specific findings of fact. Neither of those cases involve that question or any principle which points to its answer. Both cases deal with the effect to be given such an affidavit *in ruling on the motion to correct errors.*

The recurrent theme of points 2, 3 and 4 of our summary

of appellant's argument is that the trial court had an unfulfilled duty to find the facts relevant to appellant's claims and if there is no evidence, or unconvincing evidence, as to those claims (particularly what happened during the first twenty-four hours of detention) it is the court's duty to hold a further hearing. The effect of this argument is to say that the trial judge must also act as petitioner's advocate. No authority for burdening the court with that duty is cited and we are certain that none exists.

The trial court did have a duty to instruct and interrogate the appellant at the time he offered to plead guilty. It was the court's duty at that time to explain to the appellant all the rights he would be waiving if he pleaded guilty and to question the appellant to the extent necessary to insure that the transcript of the proceedings would reflect the appellant's understanding of the effect of his guilty plea and to satisfy the trial judge and the reviewing court that the plea was freely, voluntarily, and knowingly offered. *Parsons* v. *State* (1973), 159 Ind. App. 160, 304 N.E.2d 802, 40 Ind. Dec. 320. It was also the court's duty to determine that a factual basis existed for the plea. *North Carolina* v. *Alford* (1970), 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162.

All these duties the trial court discharged to the fullest extent. And he made a record thereof which appears to be impervious to attack for anything which appears on its face or which fails to appear thereon.

The transcript of the evidence at defendant's post conviction relief hearing discloses that he had the assistance of counsel (a deputy state public defender) at the hearing and that counsel gave him every opportunity to state every complaint he had. Two complaints emerged: (1) He was dissatisfied that his lawyer had talked to him only on the phone and in the courtroom and had not come to jail to see him and that "I don't believe he adequately defended me when he told me to

cooperate with the police fully, don't even enquire whether I was guilty of the crime or not." (2) "I was threatened with twenty-five years for each count of robbery that they was supposed to have me on. . . . But I was told, well, maybe we can work something out, a year on the Farm or a one to ten if you will sign statements to this, to that, so this is what I did. But when I came here and for this one to ten, or this year, it all fell back, the most I could get, the best I could get was ten flat at the Indiana State Reformatory. What could I say, they've got statements with my name all over them."

He elaborated further on his belief that he should have had an attorney there when he signed these statements, and on his ignorant faith in the police, but when given repeated opportunities to state any further complaint, he failed to say anything about the first twenty-four hours. He said he could think of nothing further but that he was under "pressure" because this was the first time he had been in "a witness box". However, he declined the offer of a continuance.

At no time does it appear that appellant has sought to bring into the record any parol or written testimony of his privately employed counsel who advised him to cooperate with the police and who appeared with him at guilty plea hearing when he told the judge he understood what the penalty was for armed robbery, not less than ten years nor more than twenty years determinate, that the judge could say ten years or twenty years, or anything in between, although he now says that the lawyer promised him a one to ten year indeterminate sentence.

But wholly on appellant's own testimony, and even in the allegations in his post-hearing affidavit, taking his statements as true, it is impossible to say that his attorney gave him bad advice or that his following that advice did not get him a lighter sentence than silence and a jury trial on a not guilty plea would have produced. When he called his attorney

immediately after his arrest on the robbery charge he told the attorney what the charge was, that Sgt. Dunn was the detective, and that the police claimed to have his picture taken during the robbery. The attorney could have reasoned that the picture was probably sufficient to convict the appellant and that his best chance to escape an indeterminate sentence of ten to twenty years was to cooperate with the police even if it meant confessing not only to the robbery in which he was caught in the act by the photoscan camera but also to other crimes which would earn police gratitude for enabling them to solve several crimes with one arrest. While appellant's hope for a "one-to-ten" rather than a "ten-flat" (and perhaps his attorney's hope) was not realized, he still came off better than had he been convicted by a jury of robbery.

If the trial court believed that the appellant himself had that understanding of his situation at the time he pleaded guilty, we could not say that the belief is not supported by the evidence before the court at the time the guilty plea was accepted and by all the evidence which has been offered since that time, including the affidavit attached to the second motion to correct errors.

Had the appellant succeeded in sustaining his burden (which he did not) of proving that the robbery victim's potential in-court identification of him as the robber was tainted by an impermissibly suggestive line-up, show-up, or other pretrial identification, he has still failed to show that he would have been injured thereby. Sgt. Harry Dunn, who knew him, did not need the victim's identification after he saw the photoscan picture and it is doubtful that a jury would have.

Judgment affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 306 N.E.2d 142.